FILED
CLERK, U.S. DISTRICT COURT

JUL 23 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRIAN STEWARD,                    )   NO. CV 08-113-ODW(E)
                                  )
                Petitioner,       )
                                  )
        v.                        )   ORDER ADOPTING FINDINGS,
                                  )
DERRAL G. ADAMS, et al.,          )   CONCLUSIONS AND RECOMMENDATIONS
                                  )
                Respondent.       )   OF UNITED STATES MAGISTRATE JUDGE
                                  )
_____    )


        Pursuant to 28 U.S.C. § 636, the Court has reviewed the
Petition, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.  The Court approves
and adopts the Magistrate Judge's Report and Recommendation.

        IT IS ORDERED that Judgment be entered denying and dismissing
the Petition with prejudice.

///
///
///
///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2  the Magistrate Judge's Report and Recommendation and the Judgment

3  herein by United States mail on Petitioner and counsel for

4  Respondent.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED: _____7/22_____, 2008.

9

10

11                    _____
                        OTIS D. WRIGHT, II

12                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRIAN STEWARD,                      ) NO. CV 08-113-ODW(E)
                                    )
                 Petitioner,        )
                                    )
       v.                           ) REPORT AND RECOMMENDATION OF
                                    )
DERRAL G. ADAMS, et al.,            ) UNITED STATES MAGISTRATE JUDGE
                                    )
                 Respondent.        )
_____)


     This Report and Recommendation is submitted to the Honorable

Otis D. Wright, II, United States District Judge, pursuant to

28 U.S.C. section 636 and General Order 05-07 of the United States

District Court for the Central District of California.


                           PROCEEDINGS


     Petitioner filed a "Petition for Writ of Habeas Corpus By a

Person in State Custody" on January 8, 2008.  Respondent filed an

Answer on February 22, 2008.  Petitioner filed a Traverse on May 2,

2008.

**BACKGROUND**

An Information charged Petitioner with one count of possession of a firearm by a felon in violation of California Penal Code section 12021(a)(1) and one count of possession of ammunition by a felon in violation of California Penal Code section 12316(b)(1) (Clerk's Transcript ["C.T."] 32-35). The Information further alleged that Petitioner had suffered a prior burglary conviction qualifying as a "strike" under California's Three Strikes Law,[1] and had suffered six prior convictions for which Petitioner served prison terms within the meaning of California Penal Code section 667.5(b) (C.T. 33).

A jury found Petitioner guilty of being a felon in possession of ammunition in violation of California Penal Code section 12316(b)(1) (Reporter's Transcript ["R.T."] 463-64; C.T. 122-24). The jury found Petitioner not guilty of the firearm possession charge (R.T. 463; C.T. 121, 123). Petitioner admitted having suffered the prior felony convictions (R.T. 453-55; C.T. 77). The court sentenced Petitioner to a total term of nine years (R.T. 482-83; C.T. 125-26).

///
///
///

---

[1] The Three Strikes Law consists of two nearly identical statutory schemes. The earlier provision, enacted by the Legislature, was passed as an urgency measure, and is codified as California Penal Code §§ 667(b) - (i) (eff. March 7, 1994). The later provision, an initiative statute, is embodied in California Penal Code § 1170.12 (eff. Nov. 9, 1994). See generally People v. Superior Court (Romero), 13 Cal. 4th 497, 504-05, 53 Cal. Rptr. 2d 789, 917 P.2d 628 (1996). The prosecution charged Petitioner under both versions (C.T. 33).

2

1  The Court of Appeal affirmed the judgment in a reasoned opinion

2  (see Respondent's Lodgment 6; People v. Steward, 2007 WL 241266 (Cal.

3  Ct. App. 2d Dist. Jan. 30, 2007). The California Supreme Court denied

4  Petitioner's petition for review summarily (Respondent's Lodgments 7,

5  8).

7  **SUMMARY OF TRIAL EVIDENCE**

9  The following factual summary is taken from the opinion of the

10 California Court of Appeal in People v. Steward, 2007 WL 241266 (Cal.

11 Ct. App. 2d Dist. Jan. 30, 2007). See Galvan v. Alaska Dep't of

12 Corrections, 397 F.3d 1198, 1199 & n.1 (9th Cir. 2005) (taking factual

13 summary from state appellate decision).

15 **Prosecution Case**

17 Defendant was released from custody and paroled on

18 January 16, 2003.[2] He listed a specific trailer space in a

19 Lancaster mobile home park as his residence for parole

20 purposes. By June 2005, defendant had violated the

21 conditions of his parole by failing to maintain contact with

22 parole authorities. James Gaupel was a parole agent charged

23 with apprehending such parolees. On the evening of June 21,

24 2005,[3] Agent Gaupel, along with members of the Los Angeles

25 County Sheriff's Department, including Deputy Jeffrey

26 _____

27 [2]   The parties stipulated that defendant had been
convicted of a felony.

28 [3]   All dates are in 2005, unless otherwise stated.

Knittel and his partner Deputy Izzo, attempted to contact
defendant at the trailer park. When they knocked on the
door of the trailer, there was no answer-but the lights and
television were on inside.

The deputies entered the trailer and found it
unoccupied. An unloaded 12-gauge shotgun was recovered by
the door inside the back bedroom. A disassembled, double-
barreled 12-gauge shotgun was found nearby, between a
bookcase and an aquarium containing snakes. The deputies
also found numerous 12-gauge shotgun shells on the floor by
the shotguns and additional shotgun shells in a blue pouch.
Inside an old fishing tackle box on the bookshelf, the
deputies found fifty-five .38 special caliber rounds of
handgun ammunition loose in a tray and inside plastic
prescription bottles. As a parolee, defendant would have
been advised that he was not to own or possess any firearms
or ammunition.

A Nazi flag was hanging on the back bedroom wall. The
deputies found letters addressed to defendant on the same
bookshelf as the tackle box. Two of the letters had prison
addresses and one was addressed to the trailer space. The
postmarks indicated the letters had been sent in 1997 and
1998. The deputies also found a plastic bag containing a
substance that appeared to be narcotics. Testing revealed,
however, that it was merely a substance called M.S.M, which
is used to "cut" methamphetamine for the purpose of sale.

4

In another room of the trailer, the deputies found a small
tin containing 3.73 grams of methamphetamine and an
identification card in the name of defendant's father, Gene
Steward.  Mr. Steward, who had approached the deputies at
some point prior to the trailer search, was arrested at the
scene.

Deputies Knittel and Izzo returned to the trailer two
days later to arrest defendant.  Deputy Izzo knocked on the
trailer's front door.  A voice from inside responded, "Who
is it?"  Deputy Izzo said, "Open the door.  It's the
sheriff's department."  There was no response.  The deputies
called for backup assistance.  When supporting deputies
arrived approximately 30 to 45 minutes later, Deputy Knittel
forced open the door and entered along with Deputy Izzo and
Sergeant Sylvies.  They discovered defendant in the
bathroom, hiding in the bathtub with the shower curtain
closed; his two-year-old son was with him.  Defendant was
wearing swim trunks. He had numerous tattoos on his body
indicating membership in a white supremacist gang.

After his arrest, the deputies placed defendant in a
squad car.  Defendant waived his constitutional rights under
*Miranda*[4] and told Deputy Knittel that the shotguns and the
shotgun shells were not his - they belonged to defendant's
friend Shawn, who had put them in the back bedroom

---

[4]      *Miranda v. Arizona* (1966) 384 U.S. 436.

5

approximately two weeks earlier with defendant's permission. As to the handgun ammunition, defendant acknowledged that he knew it was in the room, but said, "That's just a bunch of junk." He did not assert that it belonged to anyone else. When questioned regarding the back bedroom, defendant said it was his. Defendant, who was still wearing only swim trunks, asked Deputy Knittel to retrieve his clothes, directing the deputy to a black duffel bag on the floor of the trailer's back bedroom. The clothes fit defendant.

**Defense Case**

Mr. Steward testified that he was a 20-year resident of the trailer where the guns and ammunition were found. Defendant moved away in December 2004, but would "check in" approximately once a month to see how his father was doing. Defendant occasionally spent the night in the trailer. According to Mr. Steward, defendant always stayed in the front bedroom, which defendant kept locked. Mr. Steward did not have the key to the front bedroom. Defendant did not use the back bedroom, which Mr. Steward said was his own. Mr. Steward, however, did not sleep there because it had no bed. Instead, Mr. Steward slept on the living room couch, using the back bedroom for storage.

Mr. Steward was visiting his next door neighbor when the deputies searched his trailer on June 21. He came outside and told the deputies there was no one inside.

6

Mr. Steward never told the deputies that the back bedroom
was defendant's.  Mr. Steward did not know about the
shotguns in the back bedroom; he had never seen them before
the search uncovered them.  The deputies did not ask him
about the ammunition.  Mr. Steward testified that the
bullets were his, which he kept as memorabilia, claiming
that some of the ammunition was vintage, date-stamped 1940
lead bullets.  Mr. Steward did not keep any guns, and he had
forgotten about the bullets.

Mr. Steward's neighbors had a son named Shawn
Donaldson, who came into town from Arizona in the early
morning hours of June 21.  Mr. Steward was visiting the
Donaldsons in the trailer next to his own when Shawn
arrived.  Just before Mr. Steward left the Donaldsons'
trailer, Shawn asked to store "a few things" in Mr.
Steward's trailer.  Mr. Steward agreed and asked Shawn to
take them in through the trailer's back door, while Mr.
Steward went to sleep in the front room.  He did not know
Shawn's "things" included guns or he would not have
consented.

On cross-examination, Mr. Steward admitted he was
arrested on June 21, and pled guilty to possession of
methamphetamine and a related narcotics offense.  Although
Mr. Steward knew defendant was wanted by the parole
department, he did not hide defendant in his trailer, nor
did he admit to a deputy that he was guilty of harboring

7

defendant there.

    Mr. [Shawn] Donaldson testified that he and his family had lived in the trailer next to Mr. Steward's for 20 years, but Shawn moved to Arizona in the fall of 2004. Shawn drove back home to the Lancaster trailer park on June 20, arriving at 2:30 a.m. the following day. Among the items he brought back from Arizona were the two shotguns the deputies found in the back bedroom of Mr. Steward's trailer. Shawn had a receipt for the double-barreled shotgun, which he had purchased at an Arizona gun shop on April 6. He bought the other shotgun a month later at an Arizona yard sale. Shawn recognized the shotgun shells recovered by the deputies as the ones he bought at that same yard sale.

    When Shawn returned to Lancaster on June 21, he asked Mr. Steward if he could store some of his belongings in the latter's trailer. Mr. Steward agreed and left the trailer's back door open for Shawn, who stored the shotguns, shells, and a small bag of clothes in the back bedroom. He placed the shotguns next to the bookshelf, the shells on a shelf, and the duffel bag on the floor. Some of the shells were in a box; the others were in a bag. When Shawn returned to the trailer park that evening, he saw the sheriff's deputies removing the shotguns from Mr. Steward's trailer. Shawn told them, "Those are my firearms." The deputies ignored his statement and did not question Shawn about the shotguns. The next day, Shawn went to the sheriff's station in an

1   unsuccessful attempt to retrieve his shotguns.

2

3   **Rebuttal and Surrebuttal**

4

5       Deputy Knittel testified that at the time of Mr.

6   Steward's arrest, he [Mr. Steward] admitted to the deputy

7   that he knew defendant was wanted by the parole authorities

8   and he should not have hidden defendant in his trailer.

9   Mr. Steward also told the deputy the trailer's back room was

10  defendant's.

11

12      Deputy Steven Lehrman spoke to Mr. Steward at the time

13  of the June 21 trailer search.  Mr. Steward told the deputy

14  that defendant lived in the trailer and defendant's room was

15  "[a]ll the way down the hallway at the very end."

16

17      In surrebuttal, Mr. Steward testified that he told the

18  deputy that defendant's room was the locked room "down the

19  hall," and the back room was Mr. Steward's.

20

21  (Respondent's Lodgment 6 at pp. 3-7 (original footnotes); People v.

22  Steward, 2007 WL 241266, at **1-3 (Cal. Ct. App. 2d Dist. Jan. 30,

23  2007)

24

25                      **PETITIONER'S CONTENTIONS**

26

27      Petitioner contends:

28  ///

9

1.  The evidence allegedly was insufficient to support
Petitioner's conviction (Petition, Ground One); and

2.  The trial court's failure to give a <u>sua sponte</u> unanimity
instruction assertedly violated Due Process (Petition, Ground Two).

**STANDARD OF REVIEW**

A federal court may not grant an application for writ of habeas
corpus on behalf of a person in state custody with respect to any
claim that was adjudicated on the merits in state court proceedings
unless the adjudication of the claim: (1) "resulted in a decision that
was contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the
United States"; or (2) "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. § 2254(d) (as
amended); <u>see also</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-26 (2002);
<u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Williams v. Taylor</u>, 529 U.S.
362, 405-09 (2000).

"Clearly established Federal law" refers to the governing legal
principle or principles set forth by the Supreme Court at the time the
state court renders its decision. <u>Lockyer v. Andrade</u>, 538 U.S. 63
(2003). A state court's decision is "contrary to" clearly established
Federal law if: (1) it applies a rule that contradicts governing
Supreme Court law; or (2) it "confronts a set of facts. . . materially
indistinguishable" from a decision of the Supreme Court but reaches a

10

Case 2:08-cv-00113-ODW-E   Document 13   Filed 07/23/08   Page 13 of 26   Page ID #:157

different result.  See Early v. Packer, 537 U.S. at 8 (citation
omitted); Williams v. Taylor, 529 U.S. at 405-06.


     Under the "unreasonable application prong" of section 2254(d)(1),
a federal court may grant habeas relief "based on the application of a
governing legal principle to a set of facts different from those of
the case in which the principle was announced."  Lockyer v. Andrade,
538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537
U.S. at 24-26 (state court decision "involves an unreasonable
application" of clearly established federal law if it identifies the
correct governing Supreme Court law but unreasonably applies the law
to the facts).


     A state court's decision "involves an unreasonable application of
[Supreme Court] precedent if the state court either unreasonably
extends a legal principle from [Supreme Court] precedent to a new
context where it should not apply, or unreasonably refuses to extend
that principle to a new context where it should apply."  Williams v.
Taylor, 529 U.S. at 407 (citation omitted).


     "In order for a federal court to find a state court's application
of [Supreme Court] precedent 'unreasonable,' the state court's
decision must have been more than incorrect or erroneous."  Wiggins v.
Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state
court's application must have been 'objectively unreasonable.'"  Id.
at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,
1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).  In applying these
standards, this Court looks to the last reasoned state court decision,

1   here the decision of the Court of Appeal.  See Franklin v. Johnson,

2   290 F.3d 1223, 1233 n.3 (9th Cir. 2002).

3

4                                DISCUSSION

5

6   I.   Petitioner's Challenge to the Sufficiency of the Evidence Does

7        Not Merit Habeas Relief.

8

9        On habeas corpus, the Court's inquiry into the sufficiency of

10  evidence is limited.  Evidence is sufficient unless the charge was "so

11  totally devoid of evidentiary support as to render [Petitioner's]

12  conviction unconstitutional under the Due Process Clause of the

13  Fourteenth Amendment."  Fish v. Cardwell, 523 F.2d 976, 978 (9th Cir.

14  1975), cert. denied, 423 U.S. 1062 (1976) (citations and quotations

15  omitted).  The evidence is to be considered "in the light most

16  favorable to the prosecution."  Wright v. West, 505 U.S. 277, 296

17  (1992) (plurality opinion) (quoting Jackson v. Virginia, 443 U.S. 307,

18  319 (1979)).  A conviction cannot be disturbed unless the Court

19  determines that no "rational trier of fact could have found the

20  essential elements of the crime beyond a reasonable doubt."  Wright v.

21  West, 505 U.S. at 284; Jackson v. Virginia, 443 U.S. at 317.  "The

22  reviewing court must respect the exclusive province of the fact finder

23  to determine the credibility of witnesses, resolve evidentiary

24  conflicts, and draw reasonable inferences from proven facts."  United

25  States v. Hubbard, 96 F.3d 1223, 1226 (9th Cir. 1996); see also Jones

26  v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).  "[T]he prosecution need

27  not affirmatively rule out every hypothesis except that of guilt."

28  Wright v. West, 505 U.S. at 296.  This Court cannot grant habeas

                                     12

relief on Petitioner's challenge to the sufficiency of the evidence
unless the state court's decision constituted an "unreasonable
application of" <u>Jackson v. Virginia</u>. <u>See</u> <u>Juan H. v. Allen</u>, 408 F.3d
1262, 1274-75 (9th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1137 (2006).

California Penal Code section 123216(b)(1) prohibits convicted
felons from possessing "ammunition." "Ammunition" includes, but is
not limited to, "any bullet, cartridge, magazine, clip, speed loader,
autoloader, or projectile capable of being fired from a firearm with a
deadly consequence." Cal. Penal Code § 12316(b)(2). The offense
requires proof of: (1) a prior felony conviction; (2) possession,
custody or control of ammunition; and (3) knowledge of the presence of
the ammunition. Cal. Penal Code § 12316(b)(1); <u>see</u> <u>People v. Jeffers</u>,
41 Cal. App. 4th 917, 922, 49 Cal. Rptr. 2d 86 (1996) (construing
California Penal Code section 12021, which criminalizes possession of
firearm by a convicted felon); <u>People v. Ratcliff</u>, 223 Cal. App. 3d
1401, 1410, 273 Cal. Rptr. 253 (1990) (same).

Petitioner contends the evidence was insufficient to show
possession or knowledge.[5] The Court of Appeal rejected this
contention, deeming sufficient the evidence that: (1) Petitioner
admitted to Deputy Knittel that the back room was Petitioner's and
that Petitioner knew the handgun rounds and shotgun shells were in the
back room; (2) Petitioner called the handgun rounds a "bunch of junk"
but did not deny that the rounds were Petitioner's; (3) Petitioner
kept his clothes in the back room; (4) Petitioner's tattoos linked

---

[5] Petitioner stipulated to his prior felony conviction,
and the jury was so instructed (R.T. 190-92, 341; C.T. 68).

1  Petitioner to the Nazi flag display in the back room; (5) Petitioner

2  knew about the M.S.M. in the back room; and (6) Petitioner's father

3  told the deputies that the back room was Petitioner's (Respondent's

4  Lodgment 6, pp. 7-9; see People v. Steward, 2007 WL 241266, at **4-5

5  (Cal. Ct. App. 2d Dist. Jan. 30, 2007).

6

7       Possession may be either actual or constructive.  See In re

8  Daniel G., 120 Cal. App. 4th 824, 831, 15 Cal. Rptr. 3d 876 (2004)

9  (construing statute criminalizing possession of assault weapon).

10  "Actual possession means the object is in the defendant's immediate

11  possession or control."  Id.  "Constructive possession means the

12  object is not in the defendant's physical possession, but the

13  defendant knowingly exercises control or the right to control the

14  object."  Id. (citations omitted).  The prosecution may prove

15  possession circumstantially, and "it is not necessary to show that the

16  accused was in exclusive possession of the premises."  People v.

17  Neese, 272 Cal. App. 2d 235, 245, 77 Cal. Rptr. 314, 322 (1969)

18  (citations and internal quotations and parentheses omitted); see also

19  People v. Hunt, 221 Cal. App. 2d 224, 227, 34 Cal. Rptr. 421 (1963)

20  (two or more persons may possess one weapon in violation of California

21  Penal Code section 12021); see generally People v. Williams, 5 Cal. 3d

22  211, 215, 95 Cal. Rptr. 530, 485 P.2d 1146 (1971) (possession of

23  controlled substance may be imputed "when the contraband is found in a

24  place which is immediately and exclusively accessible to the accused

25  and subject to his dominion and control, or to the joint dominion and

26  control of the accused and another") (citations and internal

27  quotations omitted).

28  ///

14

The prosecution introduced evidence that: (1) Petitioner told Deputy Knittel that the back room was Petitioner's (R.T. 141, 181, 186); (2) Petitioner asked Deputy Knittel to retrieve Petitioner's clothing from the duffel bag in the back room (R.T. 62, 64, 141); (3) Petitioner had a white supremacist tattoo and there was a Nazi flag displayed in the back bedroom (R.T. 55-56, 73-74, 136-37, 178-79); (4) in response to Deputy Knittel's question "You have handgun rounds. Why is there no handgun?" Petitioner did not deny the handgun rounds were Petitioner's, but said they were "old junk" (R.T. 142, 180, 185); (5) Petitioner told Deputy Knittel that the substance on the shelf in the back room allegedly was not methamphetamine but rather "M.S.M." (R.T. 143); (6) Petitioner acknowledged that the scales, which Deputy Knittel said were found on the shelf in the back room "within inches" of the ammunition, belonged to Petitioner (R.T. 76-77, 144); (7) officers found mail addressed to Petitioner in the back room (R.T. 75-76, 88, 172-73); and (8) Petitioner's father told deputies that the back bedroom was Petitioner's (R.T. 295, 309-10).

Although Petitioner points to allegedly exculpatory, conflicting evidence, a rational juror could have concluded, from the evidence described above, that Petitioner had possession of the ammunition and knew of the ammunition's presence. See People v. Clark, 45 Cal. App. 4th 1147, 1156, 53 Cal. Rptr. 2d 99 (1996) (evidence sufficient to show possession where defendant admitted to deputy that he knew shotgun was in motorhome where defendant was living, although defendant contended shotgun belonged to someone else); see also United States v. Rodriquez, 464 F.3d 1072, 1078-79 (9th Cir. 2006), cert. granted, 128 S. Ct. 33 (2007) (evidence sufficient to show possession

1  of firearm, where defendant examined gun and agreed to sell it for

2  someone else, defendant was observed in apartment with gun on the

3  table, two people confirmed defendant lived in apartment, defendant

4  had key to and access to entire apartment, defendant had belongings in

5  apartment, and officers found mail sent to defendant at apartment's

6  address).[6]  This Court cannot revisit the jury's resolution of any

7  alleged evidentiary conflicts.  See Bruce v. Terhune, 376 F.3d 950,

8  958 (9th Cir. 2004) (federal habeas court could not revisit jury's

9  resolution of inconsistencies between victim's account of offense and

10 those of other witnesses); United States v. Franklin, 321 F.3d 1231,

11 1239-40 (9th Cir.), cert. denied, 540 U.S. 858 (2003) (evidence

12 sufficient to support defendant's convictions for using, carrying or

13 possessing certain type of firearm, where driver of getaway car

14 testified defendant fired shots from car at pursuing officers;

15 although defendant attacked driver's credibility at trial in an effort

16 to show driver was the shooter, the jury believed the driver, and

17 court does not "question a jury's assessment of witnesses'

18 credibility" but rather presumes that the jury resolved conflicting

19 inferences in favor of the prosecution); Jones v. Wood, 207 F.3d 557,

20 563 (9th Cir. 2000) (although evidence was "almost entirely

21 circumstantial and relatively weak," questions of credibility were for

22 the jury, and prosecution evidence, if believed, sufficed to support

23

24     [6]     The petition for certiorari in United States v.
   Rodriquez, filed by the Solicitor General, presents the issue of
25 whether a state drug-trafficking offense for which state law
   authorizes a ten-year recidivist sentence qualifies as a
26 predicate offense under the Armed Career Criminal Act, 18 U.S.C.
   section 924(e).  See Petition for a Writ of Certiorari in United
27 States v. Rodriquez, United States Supreme Court case number 06-
   1646, 2007 WL 1684900 (filed June 11, 2007).
28

16

1  conviction).

2

3      Petitioner also challenges the sufficiency of the evidence to

4  show that the ammunition was capable of being fired.  The Court of

5  Appeal rejected this assertion (Respondent's Lodgment 6, p. 9; see

6  People v. Steward, 2007 WL 241266, at *5).  The rejection was not

7  unreasonable.[7]  Deputy Knittel testified he had handled shotguns as a

8  hunter since he was a boy, and that he had received firearms training,

9  taught firearms safety, and handled firearms "every day as part of my

10  job" (R.T. 79).  Deputy Knittel testified that the shotgun shells were

11  "live ammo" (R.T. 83).  Deputy Knittel also testified that he booked

12  the handgun rounds into evidence, and the evidence envelope containing

13  the .38 caliber handgun rounds was marked "8 live ammo" (R.T. 75, 82-

14  83).  Petitioner's father testified that, while some of the handgun

15  shells were war souvenirs, most of them were ".38's" which had come

16

17

18

19

20

21  _____

22      [7]    This Court assumes, arguendo, that the phrase "capable
    of being fired from a firearm with a deadly consequence" modifies
    "bullet," as well as "projectile."  The issue appears to be an
23  open one.  In 2007, the California Supreme Court granted review
    in a case in which a California Court of Appeal had ruled that
24  the concluding phrase "capable of being fired from a firearm with
    a deadly consequence" modifies only "projectile."  See People v.
25  Brown, 160 P.3d 662, 61 Cal. Rptr. 3d 2 (Cal. June 13, 2007) (No.
    S152225); Appellant's Petition for Review, etc., 2007 WL 1538355
26  (Apr. 30, 2007).  The California Supreme Court subsequently
    dismissed review on other grounds, however.  See People v. Brown,
27  169 P.3d 97, 67 Cal. Rptr. 3d 174 (Cal. Sept. 12, 2007) (No.
28  S152225).

from the Santa Monica Police Department shooting range (R.T. 214).[8]
Neither Deputy Knittel nor Petitioner's father testified that the
shells were blanks, expended shells, or otherwise incapable of being
fired from a firearm.  The handgun rounds themselves were admitted
into evidence (R.T. 83-84, 190).

        Viewed in the light most favorable to the prosecution, the above-
summarized evidence could have persuaded a rational jury to find
beyond a reasonable doubt that the ammunition was "capable of being
fired from a firearm with a deadly consequence."  See In re Brandon
G., 160 Cal. App. 4th 1076, 1080, 73 Cal. Rptr. 3d 273 (2008)
(uncontroverted testimony of officer that shotgun shell was live
constituted sufficient evidence where officer assertedly had training
and experience in the handling and recognition of guns and
ammunition); In re Khamphouy S., 12 Cal. App. 4th 1130, 1134-35, 15
Cal. Rptr. 2d 882 (1993) (evidence sufficient where ammunition
reportedly "looked live," was apparently regarded as live by officers
who carefully collected and described it, and was of the same brand as
bullets found in a .38 revolver); Vasquez v. Kramer, 2008 WL 962870,
at *3 (C.D. Cal. Apr. 3, 2008) (evidence sufficient where officers
with significant experience testified bullet was live, court received
bullet into evidence, and petitioner did not introduce any evidence
that bullet was a blank or dummy round); see also People v. Williams,

---

        [8]    Petitioner's father said he had "two 1940 Mohawk,
prewar" which he had obtained at the age of eight, and one .410
shotgun shell (R.T. 214).  Petitioner's father said  that "a lot"
of the ammunition was "prewar," but also said that it was "mostly
.38's" which had come from the Santa Monica Police Department
shooting range (R.T. 214).

18

1  184 Cal. App. 2d 673, 675, 7 Cal. Rptr. 604 (1960) ("[t]he jury

2  observed the pistol in evidence and could well determine that it was

3  capable of being fired and was a deadly weapon"; evidence sufficient

4  to show defendant carried a concealed weapon in violation of

5  California Penal Code section 12025(b)); United States v. Hunt, 187

6  F.3d 1269, 1270-71 (11th Cir. 1999) (testimony of two witnesses

7  regarding the appearance of a gun and surveillance photographs of a

8  gun were sufficient to prove that the gun remembered by the witnesses

9  and depicted in the photographs was a firearm rather than a

10 sophisticated toy or other facsimile of an operating gun); Miranda v.

11 Giurbino, 2006 WL 2917575 *4 (C.D. Cal. Aug. 17 2006) (testimony of

12 one witness was sufficient to prove that a gun was real); compare In

13 re Arcenio V., 141 Cal. App. 4th 613, 616-17, 46 Cal. Rptr. 3d 232

14 (2006) (evidence was insufficient to prove that particular ammunition

15 was live where there was no opinion testimony directed to the

16 subject).

18         In light of this Court's review of the entire record,[9] the Court

19 cannot deem the Court of Appeal's rejection of Petitioner's

20 sufficiency claims to have been objectively unreasonable. See 28

21 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas

22 relief on Ground One of the Petition.

23 ///

24 ///

25 ///

27         [9]    The Court must conduct an independent review of the
   record when a habeas petitioner challenges the sufficiency of the
28 evidence. See Jones v. Wood, 114 F.3d at 1008.

19

Case 2:06-cv-00113-ODW-E   Document 19   Filed 07/23/08   Page 22 of 26   Page ID #:166

## II.   The Trial Court's Failure to Give a Sua Sponte Unanimity Instruction Does Not Merit Habeas Relief.

Under California law, a jury verdict in a criminal case must be unanimous.  See People v. Collins, 17 Cal. 3d 687, 693, 131 Cal. Rptr. 782, 552 P.2d 742 (1976), cert. denied, 429 U.S. 1077 (1977).  Where a conviction on a single count could be based on two or more discrete criminal events, a trial court must give a unanimity instruction.  See People v. Perez, 21 Cal. App. 4th 214, 223, 26 Cal. Rptr. 2d 691 (1993); see also People v. Wolfe, 114 Cal. App. 4th 177, 185, 7 Cal. Rptr. 3d 483 (2003) (trial court erred in failing to give unanimity instruction where alleged possession of different firearms was "fragmented" as to space and time); People v. Crawford, 131 Cal. App. 3d 591, 596, 182 Cal. Rptr. 536 (1982) (court erred in failing to give sua sponte unanimity instruction, where various weapons were found in different areas in defendant's residence).  The purpose of the instruction is "to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed."  People v. Russo, 25 Cal. 4th 1124, 1132, 108 Cal. Rptr. 2d 436, 25 P.3d 641 (2001) (citations omitted).

Petitioner contends the trial court erred in failing to give a sua sponte instruction requiring the jurors to decide unanimously on

1  the criminal act constituting the offense (Petition, p. 5B).[10]

2  Petitioner asserts that the alleged possession of the shotgun

3  ammunition was distinct from the alleged possession of the handgun

4  ammunition.  The Court of Appeal ruled that California law required a

5  unanimity instruction, but deemed the omission harmless (Respondent's

6  Lodgment 6, pp. 13-14; see People v. Steward, 2007 WL 241266, at *7-

7  8).

8

9      While Petitioner may have had a state law right to a unanimous

10  verdict, no clearly established Supreme Court law recognizes such a

11  right under the federal Constitution.  To the contrary, the Supreme

12  Court has ruled that "a state criminal defendant, at least in

13  noncapital cases, has no federal right to a unanimous jury verdict."

14  Schad v. Arizona, 501 U.S. 624, 634 n. 5 (1991); Apodaca v. Oregon,

15  406 U.S. 404 (1972); Johnson v. Louisiana, 406 U.S. 356, 359-63

16  (1972); see Richardson v. United States, 526 U.S. 813, 821 (1999)

17  ("this Court has not held that the Constitution imposes a jury-

18  unanimity requirement. [citation]"); Hoover v. Johnson, 193 F.3d 366

19  (5th Cir. 1999) ("the United States Supreme Court 'has not held that

20  the Constitution imposes a jury unanimity requirement'") (footnote

21  omitted); Villa v. Mitchell, 2006 WL 707363 (E.D. Cal. 2006) ("A state

22  criminal defendant in a noncapital case has no federal constitutional

23  right to a unanimous verdict. [citations].").  "[T]he requirement for

24  jury unanimity in a criminal prosecution is a state constitutional

25  _____

26      [10]  The trial court instructed the jurors, using CALCRIM
    3550, that they were required to reach a unanimous verdict (R.T.
27  433; C.T. 108), but did not give a more specific unanimity
    instruction (CALCRIM 3500) requiring unanimity as to a particular
28  act constituting the offense.

1   requirement. [citations].  The United States Supreme Court has never

2   held jury unanimity to be a requisite of due process of law."  People

3   v. Vargas, 91 Cal. App. 4th 506, 561-62, 110 Cal. Rptr. 2d 210 (2001)

4   (citation and internal quotations omitted).[11]  Therefore, the trial

5   court's failure to give a unanimity instruction did not violate the

6   Constitution.  See Matthews v. Terhune, 2000 WL 1229060, at *6 (N.D.

7   Cal. Aug. 18, 2000) (because "criminal defendants in state court have

8   no federal constitutional right to unanimous jury verdicts," failure

9   to give unanimity instruction did not merit habeas relief).

10

11       Accordingly, the Court of Appeal's rejection of Petitioner's

12   unanimity claim was not contrary to, or an objectively unreasonable

13   application of, any clearly established Federal law as determined by

14   the United States Supreme Court.  See 28 U.S.C. § 2254(d).  Hence,

15   Petitioner is not entitled to habeas relief on Ground Two of the

16   Petition.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

25   ───────────────

26       [11]    In Schad v. Arizona, the Supreme Court suggested that a
     charge "of a 'Crime' so generic that any combination of jury
27   findings on embezzlement, reckless driving, murder, burglary, tax
     evasion, or littering, for example, would suffice for conviction"
28   might violate Due Process.  Schad v. Arizona, 501 U.S. at 633.
     No such "generic" charge existed in Petitioner's case.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED:  May 14, 2008.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.